**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:25-cr-03035-MDH-1 |
| | ) | |
| | ) | |
| JEREMY KOPPENHAVER, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant Jeremy Koppenhaver's Motion to Suppress. (Doc. 29). The Government has filed its suggestions in opposition. (Doc. 34). Mr. Koppenhaver has not filed a reply and the time to do so has passed. The Court held a hearing on this matter on October 2, 2025. (Doc. 50). The issue is now ripe for consideration. For the reasons that follow, it is recommended that the motion be DENIED.

## I. Findings of Fact

Based on the evidence presented at the hearing, the Court submits the following proposed findings of fact:

1.  On June 22, 2024, Officers Logan Sayre and Aaron McConnell of the Springfield Police Department ("SPD") responded to a report that a white male customer was in possession of child pornography at the Mudhouse Café in Springfield, Missouri. (Doc. 34 at 1;Tr. 5:4-8; 9:3-7; 15:13-25).

2.  Officer Sayre met with the caller, J.M., who reported that he and his wife had seen an image of a "little girl" giving a man a "blowjob" on the laptop screen of an individual

with a "man bun," wearing a red "Patrick Mahomes 15" jersey. (Tr. 7:4-21; 17:5-23; 18:18-23; Doc. 34 at 1;*see* Gov't Ex. 1 at 0:43-2:27).

3.     J.M. told Officer Sayre that the man would close his laptop when others walked past. He reported that his wife noticed a pop-up on the man's laptop screen indicating a terms of use violation. (Tr. 8:20-25, 9:1:2; 43:2-13; Doc. 34 at 2).

4.     Officer Sayre relayed to Officer McConnell what J.M. reported to him, including that J.M. saw pornographic images of a young girl on the man's laptop. (Tr. 15:15-23; 43:2-9; Gov't Ex. 1 at 2:30-4:00).

5.     Officers Sayre and McConnell approached the man who identified himself as Jeremy Koppenhaver. (Tr. 18:15-25) (Doc. 34 at 2). Mr. Koppenhaver consented to gathering his belongings and walking out of the café with the officers. (Doc. 34 at 2) (Gov't. Ex. 1 at 4:50-12:30).

6.     As Mr. Koppenhaver closed his laptop, Officer Sayre saw an image of two figures "making out" on the screen. (Tr. 12:3-8; 19:13-25) (Doc. 34 at 2).

7.     Outside the café, Officer McConnell questioned Mr. Koppenhaver about the contents of his laptop. Mr. Koppenhaver admitted to possessing an artistic photograph of an adult female with exposed breasts but denied possessing child pornography. Officer McConnell informed Mr. Koppenhaver that he was only investigating the presence of child pornography. Mr. Koppenhaver denied possessing child pornography but refused to open his laptop to show officers the images on his computer. (Tr. 21:2-7; 38:1-5) (Doc. 34 at 2).

8.     Officer McConnell learned that Mr. Koppenhaver had failed to appear on a warrant for possession of a controlled substance in Greene County, Missouri. (Tr. 21:8-16). Officer

McConnell placed Mr. Koppenhaver under arrest for failure to appear on the warrant. (Tr. 21:17-18) (Doc. 34 at 2).

9.  Mr. Koppenhaver was carrying a blue backpack, red shoulder bag, and water bottle. (Tr. 21:22-25) (Doc. 34 at 2). Officer McConnell took the blue backpack and logged it into the SPD property room. (Tr. 22:2-17).

10. Officer McConnell conducted an inventory search of the backpack pursuant to police protocol. Officer McConnell found a short red straw with white residue inside it and a sandwich bag containing a substance that appeared to be fentanyl. The laptop was in the backpack, along with documents belonging to Mr. Koppenhaver. The suspected drugs, drug paraphernalia, and laptop were seized. (Tr. 22:18-25; 23:1-22).

11. The SPD arrested Mr. Koppenhaver on the outstanding warrant. (Doc. 29 at 3). Because Officer McConnell found drugs in Mr. Koppenhaver's backpack, he referred the case to a narcotics investigation team. (Tr. 24:5-12). SPD retained possession of Mr. Koppenhaver's laptop because of the potential child pornography. (Tr. 24:22-25). Mr. Koppenhaver's property, minus his laptop computer, was returned to him upon his release. (Tr. 23:23-25). (Doc. 29 at 3).

12. Mr. Koppenhaver contacted SPD on July 29, 2024, to retrieve his laptop. (Tr. 26:12-18) (Gov't. Ex. 2 at 4).

13. Initially, the SPD child crimes unit did not investigate the laptop, and Officer McConnell authorized the laptop's release on August 6, 2024. However, on August 7, 2024, before the laptop was released, the child crimes unit decided to investigate the child pornography allegations and did not release the laptop. (Gov't. Ex. 2 at 1).

14. On August 7, 2024, SPD Sergeant Jason Carter interviewed the witnesses, G.M. and J.M., from Mudhouse Café who alerted SPD to Mr. Koppenhaver's alleged possession of child pornography. (Doc. 34 at 3).

15. During Sergeant Carter's interview, G.M. stated the following:

   a. She could see Mr. Koppenhaver's laptop screen from her vantage point seated at Mudhouse Café on June 22, 2024. On the laptop screen, she saw what appeared to be a generative artificial intelligence program produce a photograph of an eight-to-ten-year-old girl with her mouth open. (Tr. 53:5-18) (Doc. 34 at 3).

   b. She observed Mr. Koppenhaver use key words and drawing mechanisms to instruct the image generator to draw a penis and insert it into the photograph. She further observed a pop-up window that indicated such efforts were in violation of the program's "community standards." (Tr. 53:19-25; 54:1-4) (Doc. 34 at 3).

   c. She noticed that Mr. Koppenhaver would close the application window or conceal his screen when others passed Mr. Koppenhaver. She believed this confirms Mr. Koppenhaver's efforts to create obscene or explicit images. (Doc. 34 at 3; *see* Gov't. Ex. 3 at 3).

   d. She saw Mr. Koppenhaver obtain a photograph of a penis and copy it into the photograph of the girl. (Doc. 34 at 3). This led G.M. and J.M. to contact SPD. (*See* Gov't. Ex. 3 at 3).

16. On August 15, 2024, SPD Detective Jason Kitta obtained a state warrant to search Mr. Koppenhaver's laptop. Detective Kitta's application and affidavit were reviewed and signed by Greene County assistant prosecuting attorney, Elizabeth K. Fax. (Doc. 34 at 24; *see* Gov't. Ex. 3). Greene County Circuit Judge Jody Stockard found probable cause

and issued the warrant on August 15, 2024, at 11:26 A.M. (Tr. 62:11-16) (Doc. 34 at 24; *see* Gov't. Ex. 3). Detective Kitta executed the search warrant the same day. (Tr. 62:17-23; 63:20-22).

17.    To execute the search warrant, Detective Kitta retrieved the laptop from SPD's property room and gave the laptop and signed warrant to the computer crimes unit for forensic investigation. (Tr. 61: 3-9) (Doc. 34 at 26).

18.    On October 24, 2024, the laptop's contents were examined by a forensic investigator. (Doc. 34 at 3). SPD Sergeant Burnett examined the forensic evidence on November 6, 2024. (Doc. 29 at 9).

## II. <u>Discussion</u>

On April 1, 2025, a federal grand jury in the Western District of Missouri indicted Mr. Koppenhaver for knowingly receiving, producing, and distributing visual depictions involving the use of a minor engaging in sexually explicit conduct, in violation of Title 18 U.S.C. § 2252(a)(2) and § 2252(b)(1). On July 30, 2025, Mr. Koppenhaver filed the instant motion seeking suppression of "evidence obtained and observations made as a result of the illegal seizure of Mr. Koppenhaver's laptop on June 22, 2024, and on all occasions thereafter," (Doc. 29 at 10), including "all evidence discovered during a search warrant of a HP model 15DW1001 wm [sic] laptop computer, serial number CND1254G67 pursuant to a search warrant issued August 24th 2024 [sic] at 11:26 a.m." (Doc. 29 at 1). The motion challenges the constitutionality of the search and seizure of Mr. Koppenhaver's laptop on the basis that it violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution, and Sections 10 and 15 of Article I of the Missouri Constitution.

### A. **Legal Standard**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment is enforceable against the states through the Fourteenth Amendment. *Metro Omaha Prop. Owners Ass'n, Inc. v. City of Omaha*, 991 F.3d 880, 884 (8th Cir. 2021) (citing *Camara Mun. Ct. of the City & Cty. of San Francisco*, 387 U.S. 523, 528 (1967)). To determine whether a given search or seizure is constitutionally unreasonable, courts look at the "totality of the circumstances" surrounding the search or seizure. *See United States v. Hudspeth*, 518 F.3d 954, 961 (8th Cir. 2008).

"The warrantless seizure of property is per se unreasonable unless it falls within a well-defined exception to the warrant requirement." *Id.* One such exception is when "law enforcement authorities have probable cause to believe" property "holds contraband or evidence of a crime" and "the exigencies of the circumstances demand" immediate seizure "pending issuance of a warrant to examine its contents." *United States v. Place*, 462 U.S. 696, 701 (1983). "Probable cause exists when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Reed*, 921 F.3d 751, 757 (8th Cir. 2019) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

"Under the *Leon* good-faith exception, 'evidence seized pursuant to a search warrant . . . that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable.'" *United States v. Escudero*, 100 F.4th 964, 968 (8th Cir. 2024) (citing *United States v. Proell*, 485 F.3d, 427, 430 (8th Cir. 2007) (referencing *United States v. Leon*, 468 U.S. 897 (1984)). *Leon* identifies situations in which an officer's reliance on a warrant would be unreasonable, such as "when the affidavit in support of the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.*

(citing *Proell*, 485 F.3d at 431). When assessing an officer's good faith reliance on a search warrant under the *Leon* good faith exception, the court can look outside of the "four corners of the affidavit" and consider the totality of the circumstances, including what the officer knew but did not include in the affidavit. *United States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014).

"Judges may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant." *United States v. Daigle*, 947 F.3d 1076, 1081 (8th Cir. 2020). A reviewing court must "pay great deference to the probable cause determinations of the issuing judge or magistrate" and therefore its inquiry "is limited to discerning whether the issuing judge had a substantial basis for concluding that probable cause existed." *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016). When a warrant is contested, probable cause is determined based on the information before the issuing judicial officer. *Daigle*, 947 F.3d at 1081.

If the police fail to abide by the Fourth Amendment, the exclusionary rule, a judicially prescribed remedial measure, "forbids the use of improperly obtained evidence at trial." *Martinez Carcamo v. Holder*, 713 F.3d 916, 922 (8th Cir. 2013) (quotation omitted). The exclusionary rule extends to "evidence later discovered and found to be derivative of an illegality or 'fruit of a poisonous tree.'" *United States v. Tuton*, 893, F.3d 562, 568 (8th Cir. 2018). For there to be "fruit," there must first be a "poisonous tree," that is, "an illegal search or seizure" or "an illegality." *United States v. Finley*, 56 F.4th 1159, 1166 (8th Cir. 2023) (internal citations omitted).

**B. Mr. Koppenhaver's Rule 41 claim fails.**

Mr. Koppenhaver argues that Rule 41 of the Federal Rules of Criminal Procedure was violated when SPD waited 55 days, from June 22, 2024, to August 15, 2024, before seeking court approval to search his laptop. (Doc. 29 at 6). During that time, the laptop remained in SPD custody.

(*Id.*). The Government argues that the search warrant for Mr. Koppenhaver's laptop was issued and executed on August 15, 2024, and was thus timely pursuant to Rule 41's requirement to "execute the warrant within a specified time no longer than 14 days". *See* Fed. R. Crim. P. 41(e)(2)(A)(i). The Government does not dispute that Mr. Koppenhaver's laptop computer was in SPD custody from June 22, 2024, to August 15, 2024. This Court recommends that the District Judge find that the warrant was executed in compliance with Federal Rule of Criminal Procedure 41.

Under Fed. R. Crim. P. 41(e)(2)(A), upon issuing a warrant, "[t]he warrant must command the officer to: (i) execute the warrant within a specified time no longer than 14 days." Here, the search warrant was issued and executed on August 15, 2024, in compliance with Rule 41. A warrant is timely when it is executed the same day it is issued. *United States v. Koch*, 625 F.3d 470, 476 (8th Cir. 2010). Accordingly, the warrant in this case was timely executed.

While Rule 41 requires that the warrant be executed within 14 days, it does not require that forensic analysis and examination be conducted within the same time frame. Rule 41(e)(2)(B) specifically states that a warrant seeking electronically stored information "authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or onsite copying of the media or information, and not to any later off-site copying or review."

Even if Rule 41 was violated, "noncompliance with Rule 41 does not automatically require exclusion of evidence in a federal prosecution. Instead, exclusion is required only if a defendant is prejudiced or if reckless disregard of proper procedure is evidence." *United States v. Mutschelknaus*, 592 F.3d 826, 829 (8th Cir. 2010) (internal citations omitted). Mr. Koppenhaver does not argue that the time between execution of the search warrant and the forensic analysis

prejudiced him. Accordingly, this Court recommends that the District Judge find that there was no Rule 41 violation.

### C. Mr. Koppenhaver's laptop was properly seized incident to arrest and held by SPD for investigation.

Mr. Koppenhaver argues that police did not have probable cause to seize his laptop because officers arrested him for drug charges, and officers did not observe child pornography on his laptop prior to his arrest. (Doc. 29 at 4). The Government argues that eyewitness reports of child pornography on Mr. Koppenhaver's laptop creates probable cause to seize the laptop. (Tr. 72:13-25, 73:1-21; Doc. 34 at 4-5). This Court recommends that the District Judge find that SPD had probable cause and that Mr. Koppenhaver's laptop was properly seized incident to arrest.

A "'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Clutter*, 674 F.3d 980, 984 (8th Cir. 2012) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). However, "[w]here law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the [Fourth] Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *United States v. Clutter*, 674 F.3d 980, 985 (8th Cir. 2012) (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)); *see Jacobsen*, 466 U.S. at 121-22. "The existence of exigent circumstances is an objective analysis focusing on what a reasonable, experienced police officer would believe." *United States v. Williams*, 431 F.3d 1115, 1118 (8th Cir. 2005) (internal quotation marks omitted).

An eyewitness report of child pornography on a laptop is an exigent circumstance that permits seizure without a warrant. *Clutter*, 674 F.3d at 985. The seizure of a laptop "to ensure that

the hard drive was not tampered with before a warrant was obtained" does not violate the Fourth Amendment. *Clutter*, 674 F.3d at 985 (quoting *United States v. Mitchell*, 565 F.3d 1347, 1350 (11th Cir. 2009)); *accord United States v. Walser*, 275 F.3d 981, 985-58 (10th Cir. 2001), *cert. denied*, 535 U.S. 1069 (2002). If the property is not seized immediately, there is a risk that the evidence contained therein would be lost, *see Garmon v. Foust*, 741 F.2d 1069, 1074-75 (8th Cir. 1984), or destroyed, *see Radloff v. City of Oelwein*, 380 F.3d 344, 348 (8th Cir. 2004). And, "[c]omputer evidence is vulnerable to tampering or destruction." *Walser*, 275 F.3d at 985; *see United States v. Campos*, 221 F.3d 1143, 1147 (10th Cir. 2000) (quoting affidavit of FBI agent).

"Where probable cause depends upon information supplied by an informant, '[t]he core question . . . is whether the information is reliable.'" *United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013) (quoting *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)). If sources provide the information in person and are not anonymous, they are more reliable. *United States v. Scott*, 818 F.3d 424, 432 (8th Cir. 2016); *United States v. Faulkner*, 826 F.3d 1139, 1145 (8th Cir. 2016), *cert. denied*, 137 S. Ct. 2092 (2017). First-hand observations provide an "inherent indicia of reliability." *United States v. Robertson*, 39 F.3d 891, 893 (8th Cir. 1994) (citing *United States v. Jackson*, 898 F.2d 79, 81 (8th Cir. 1990)).

Officer Sayre testified that he received eyewitness information providing first-hand observations of Mr. Koppenhaver attempting to create AI-generated child pornography. (Tr. 7:4-21; 17:5-23; 18:18-23). Sergeant Carter interviewed J.M. and G.M. on the phone. (Tr. 52:15-21). SPD learned from eyewitness reports that the "laptop likely was used to further [Mr. Koppenhaver's] scheme" and that evidence of that scheme may be on the laptop. *See United States v. Smith*, 715 F.3d 1110, 1113-14, 1116-17 (8th Cir. 2013) (concluding that the warrantless seizure of the defendants messenger bag was supported by probable cause because the investigators had

learned that a laptop likely was used to further the defendants fraud scheme and believed the bag contained a laptop given its size and shape); *see United States v. Mays*, 993 F.3d 607, 614-15 (8th Cir. 2021). These statements made it fairly probable that evidence of Mr. Koppenhaver's illicit activity would be found on the laptop, furnishing investigators with probable cause to seize it.

Exigent circumstances justified SPD's warrantless seizure of Mr. Koppenhaver's laptop. Further investigation into the child pornography allegation created the necessary probable cause used by Detective Kitta to seek a warrant to search the laptop. Accordingly, this Court recommends that the District Judge find that the seizure of Mr. Koppenhaver's laptop did not violate Mr. Koppenhaver's Fourth Amendment rights.

### D. The continued seizure from June to August was reasonable while SPD investigated the child pornography allegations.

Mr. Koppenhaver argues that SPD's 55-day seizure of his laptop deprived him of his private property for an unreasonable length of time. (Doc. 29). Mr. Koppenhaver further argues that, even if the seizure of the laptop was reasonable incident to arrest, the seizure became unreasonable when investigators delayed 55 days before applying for a search warrant. (*Id.*). He argues that the laptop should have been returned to him not only because the duration of the seizure was excessive, but also because the personal nature of a laptop would expose the Government to intimate details of a person's life, and deprivation of a laptop would impair day-to-day functioning. (Doc. 29 at 5). The Government argues that the continued seizure of the laptop was reasonable. (Doc. 34).

The duration of a seizure pending the issuance of a search warrant must be reasonable. *United States v. Thomas*, 97 F.4th 1139, 1143 (8th Cir. 2024). "We measure reasonableness objectively based on the totality of the circumstances, balancing the privacy-related concerns against law enforcement's concerns." *Id*. (citing *Mays*, 993 F.3d at 616-17). Factors relevant to the private interests include "the significance of the interference with the person's possessory interest,

the duration of the delay, whether the person consented to the seizure, and the nature of the seized property." *Mays*, 993 F.3d at 617. Factors relevant to government and law enforcement concerns include "the government's legitimate interest in holding the property as evidence, the nature and complexity of the investigation, the quality of the warrant application and the amount of time [the court] expect[s] the application would take to prepare, and any other evidence proving or disproving law enforcement's diligence in obtaining the warrant." *Id*.

A laptop "raises important Fourth Amendment concerns because of the quality and quantity of private personal data it likely contains, and because lengthy seizure of an item of vital importance in daily life is likely to significantly interfere with a person's possessory interests." *United States v. Bragg*, 44 F.4th 1067, 1072 (8th Cir. 2021) (discussing privacy interests in defendant's iPhone); *see also Robbins v. City of Des Moines*, 984 F.3d 673, 680-81 (8th Cir. 2021) (finding warrantless seizure of cell phone and camera, and detention for twelve days without arguable probable cause unreasonable). But the importance of a laptop is neither dispositive nor weighed more heavily than any other factor. Computers "'retain data for long periods of time,' so delay between the time the laptop computer is seized and when it is searched is not likely to cause stored personal data to be lost, or data of potential evidentiary relevance to become stale." *Bragg*, 44 F.4th at 1072. This lessens the impact of the seizure on personal property interests.

Mr. Koppenhaver contacted SPD to retrieve his laptop. Evidence that a defendant requested return of personal items strengthens a Fourth Amendment claim. *Thomas*, 97 F.4th at 1143. The Government justifies its seizure by affirming it had probable cause to believe the laptop contained evidence of Mr. Koppenhaver's crimes and thus had a strong interest in seizing it. *Id.* at 1144;(*see* Tr. 75:14-23). "All else being equal, the Fourth Amendment will tolerate greater delays after probable-cause seizures." *Bragg*, 44 F.4th at 1073 (internal quotations omitted). Mr. Koppenhaver

was arrested on an outstanding warrant, and law enforcement discovered drugs in his backpack. Further investigation created probable cause to believe Mr. Koppenhaver was engaged in creating child pornography on the laptop. Here, the relevant circumstances, including Mr. Koppenhaver's statement that the laptop belonged to him, gave officers reason to hold the laptop to apply for a warrant to search for evidence of child pornography.

Mr. Koppenhaver introduced no evidence that SPD delayed merely "because law enforcement officers simply believed that there was no rush." *Bragg*, 44 F.4th at 1073 (quoting *United States v. Mitchell*, 565 F.3d 1347, 1353 (11th Cir. 2009) (21-day delay unreasonable)), or that the delay was the result "of complete abdication of [officer's] work or failure to see any urgency." *Bragg*, 44 F.4th at 1073 (quoting *United States v. Burgard*, 675 F.3d 1029, 1034 (7th Cir. 2012)) (internal citations omitted). Rather, the Government presented evidence that SPD worked diligently while understaffed. (Tr. 51:6-24).

Detective Kitta took over the investigation in July 2024. (Doc. 34 at 8). During that month, Detective Kitta took vacation time and worked other cases. (Doc 34 at 8). In August, Detective Kitta conducted further interviews with G.M. and J.M. The Government's continued investigation, coupled with the investigating officer's assignment on multiple cases, may make a delay more reasonable. *See United States v. Beckmann*, 786 F.3d 672, 681 (8th Cir. 2015) (finding suppression improper when government delayed two years in returning a warrant to search a computer in child pornography case); *United States v. Lemon*, 590 F.3d 612, 614 (8th Cir. 2009) (upholding a search warrant for a residence issued eighteen months after discovering information related to child pornography); *see also United States v. Vallimont*, 378 Fed. Appx. 972, 976 (11th Cir. 2010) (45-day delay reasonable where officers' attention was diverted to other matters); *United States v. Christie*, 717 F.3d 1156, 1163 (10th Cir. 2013) (finding five-month delay reasonable in part

because no one complained about the delay and agent was called upon to help with out-of-town undercover operations in other cases); *United States v. Sykes*, 65 F.4th 867, 878 (6th Cir. 2023), cert. denied, 144 S. Ct. (2024) (concluding that a 42-day delay was reasonable when the delay was not due to indecision or lack of diligence but instead due to demands of the defendant's case and other cases).

Mr. Koppenhaver argues that the search of his laptop exceeded the scope of a lawful search incident to arrest because his arrest was for a drug charge. (Doc. 29 at 4). But this argument fails to recognize that Officers Sayre and McConnel, as well as Detective Kitta, developed probable cause to believe that Mr. Koppenhaver was creating child pornography with the laptop during their investigation. Detective Kitta's affidavit cites his interview with G.M. as his primary source of information justifying the warrant. (Doc. 34 at 26). The Government had probable cause to believe the laptop contained evidence of Mr. Koppenhaver's crimes and thus had a strong interest in seizing it. *Thomas*, 97 F.4th at 1144. For these reasons, this Court recommends that the District Court find that the delay was reasonable in these circumstances.

**E. The good-faith exception applies even if the warrant was improper.**

The Government asserts the good-faith exception applies even if the affidavit was lacking. (Doc. 34 at 12). This Court recommends finding that, even if the seizure and warrant were improper, the good-faith exception applies, and Mr. Koppenhaver's Fourth Amendment rights were not violated.

"The ordinary sanction for police violation of the Fourth Amendment limitations has long been suppression of the evidentiary fruits of the transgression." *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011). But, the exclusionary rule does not apply "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *United States v. Leon*, 468 U.S. 897, 920 (1984). "Under the good-faith exception,

evidence seized pursuant to a search warrant issued by a magistrate that is later determined to be valid will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *United States v. Houston*, 665 F.3d 991, 994 (8th Cir. 2012) (quoting *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007)). Evidence should be suppressed "only if it can be said that the law enforcement officer[s] had knowledge, or may be properly charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Illinois v. Krull*, 480 U.S. 340, 348-49 (1987). The operative test is whether "a reasonably well trained officer would have known that the search was illegal." *Koch*, 625 F.3d at 477. The application of the test is fact-driven. *Id*. "When assessing the objective [reasonableness] of police officers executing a warrant, we must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge.'" *Houston*, 665 F.3d at 995 (internal quotations omitted).

Given the instant facts, this Court concludes that an officer cognizant of the testimony of G.M. and J.M., both at Mudhouse Café and during subsequent interviews with SPD, could have reasonably presumed the warrant to search for child pornography on Mr. Koppenhaver's laptop to be valid. Under these facts, we cannot say that the warrant was "'so facially deficient' that no police officer could reasonably presume the warrant to be valid." *Proell,* 485 F.3d at 431 (internal quotations omitted). Thus, SPD conducted the search in good faith.

Accordingly, this Court recommends that, should the District Court find the warrant issued on August 15, 2024, to search Mr. Koppenhaver's laptop was insufficient, the *Leon* good-faith exception applies and the search did not constitute a Fourth Amendment violation.

### III. Conclusion

For the foregoing reasons, IT IS RECOMMENDED that the District Judge, after making an independent review of the record and applicable law, enter an order DENYING Defendant Jeremy Koppenhaver's Motion to Suppress. (Doc. 29).

Counsel are reminded that each party has fourteen (14) days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation that are accepted or adopted by the District Judge, except on the grounds of plain error or manifest injustice.

Dates this 10th day of October, 2025, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*

Willie J. Epps, Jr.
Chief United States Magistrate Judge